**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Telephone:  310.820.8800
Facsimile:  310.820.8859
Emails:    *mkane@bakerlaw.com*
              *abeverlin@bakerlaw.com*
              *ksakaue@bakerlaw.com*

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile:  415.659.2601
Email:      *sjkim@bakerlaw.com*

Attorneys for Defendant
OLD DOMINION FREIGHT LINE, INC. and
*Specially Appearing* Defendant JAKE HALL

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAOUHER MEGDICH, an Individual.<br><br>    Plaintiff,<br><br>    v.<br><br>OLD DOMINION FREIGHT LINE, INC., a Virginia stock corporation; JAKE HALL, an individual; and DOES 1-10, inclusive;<br><br>    Defendants. | CASE NO.:<br><br>[Sacramento County Superior Court Case No. 24CV020041]<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>Action Filed:          October 1, 2024 |

4920-3226-8291.2

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN**

2  **DISTRICT OF CALIFORNIA:**

3    PLEASE TAKE NOTICE that Defendant Old Dominion Freight Line, Inc. ("**ODFL**") and

4  *Specially Appearing* Defendant Jake Hall ("**Sham Defendant Hall**") (collectively, "**Defendants**"),

5  by and through their counsel, hereby remove the above-entitled action from the Superior Court of

6  the State of California in and for the County of Sacramento (the "**State Court**"), in which the

7  action is currently pending, to the United States District Court for the Eastern District of California

8  on the grounds that this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332,

9  1441, and 1446 and all other applicable bases for removal. In support of this Notice of Removal,

10  Defendants aver as follows:

11          **PLEADING AND PROCEDURES**

12    1.  On October 1, 2024, Plaintiff Jaouher Megdich filed an unverified Complaint for

13  Monetary and Punitive Damages (the "**Complaint**") in the State Court commencing this civil

14  action against Defendants in a case styled *Jaouher Megdich, an Individual v. Old Dominion*

15  *Freight Line, Inc., a Virginia stock corporation; Jake Hall, an individual; and Does 1-10*,

16  *inclusive*; Case No. 24CV020041 (the "**State Court Action**").  A true and correct copy of the

17  Complaint is attached hereto as **Exhibit A**.

18    2.  On October 28, 2024, ODFL's registered agent for service of process was

19  personally served with the Complaint in the State Court Action and the following documents:

20        **Exhibit B**:  Summons [ODFL]

21        **Exhibit C**:  Civil Case Cover Sheet

22        **Exhibit D**:  Notice of Case Assignment and Case Management Conference

23    3.  Defendants are informed and believe that the following additional documents are

24  also on file in the State Court Action, true and correct copies of which are attached as the Exhibits

25  identified below:

26        **Exhibit E**:  Proof of Service of Summons for ODFL

27        **Exhibit F**:  Proof of Service of Summons for Sham Defendant Hall

28    4.  Defendants are informed and believe that the aforementioned documents and

1

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

5.      Defendants are informed and believe that Sham Defendant Hall has not been properly served with the Summons, Complaint or any other process or pleadings from the State Court Action.  The docket for the State Court Action reflects that Plaintiff filed a Proof of Service purporting to reflect personal service on Sham Defendant Hall, but the Proof of Service shows that Plaintiff improperly purported to serve Sham Defendant Hall through ODFL's registered agent for service of process.  Therefore, Sham Defendant Hall has not been properly served with process in this action, and Sham Defendant Hall removes this action by special appearance only, without waiver of, and expressly reserving, his right to challenge the Court's jurisdiction on the grounds of, *inter alia*, insufficient process and/or insufficient service of process.

6.      Defendants are informed and believe that there has been no service of process upon Does 1 through 10, which are fictitious defendants and therefore properly disregarded for the purpose of removal.  28 U.S.C. § 1441(a).

## TIMELINESS OF REMOVAL

7.      This action has not previously been removed to federal court.

8.      The Ninth Circuit has held and clarified that removal is timely <u>at any time</u> so long as (1) the face of the complaint does not plainly allege all elements needed for jurisdiction (including the amount in controversy), and (2) plaintiffs have not served some other "paper" that concedes all elements needed for jurisdiction.  *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant").[1]

---

[1] *See also Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *3 (C.D. Cal. July 31, 2019) (finding removal based on traditional diversity jurisdiction was timely where the complaint did not indicate on its face that more than $75,000 was in controversy and, thus, the thirty-day removal clock did not start); *Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *2-4

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

9.      Here, the Complaint does not plainly allege all elements needed for removal under traditional diversity jurisdiction, and Plaintiff has not served some other "paper" that concedes all elements needed for such removal.  Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit authority.

## REMOVAL JURISDICTION – DIVERSITY

10.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), 28 U.S.C. § 1441(b), and all other applicable bases for removal.  As required by 28 U.S.C. § 1441, Defendants seek to remove this case to the United States District Court for the Eastern District of California which is the District Court embracing the place where the State Court Action has been filed.

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is an action that may be removed to this Court by Defendants, because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and ODFL, on the other hand; (2) Sham Defendant Hall is a fraudulently joined sham and nominal defendant and, therefore, his citizenship is disregarded for purposes of this removal; and (3) the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs.

12.      In accordance with 28 U.S.C. § 1446(d), Defendants will provide contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## CITIZENSHIP OF PARTIES

13.      **Plaintiff's Citizenship.**  Defendants are informed and believe that, at all times relevant to this action, Plaintiff has been and is a resident and citizen of the State of California. *See* Exh. A (Complaint), ¶ 2 ("At all times relevant for purposes of this Complaint, [Plaintiff] has been a resident of the State of California.").  Further, Defendants are informed and believe and thereon allege that Plaintiff intends to indefinitely remain living continuously in California, and that his domicile is presently in California.  Accordingly, Plaintiff is a resident and citizen of the State of California for purposes of traditional diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also, e.g., Mondragon v.*

(C.D. Cal. May 27, 2015) (same).

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1   *Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) (person's continuing domicile in a state

2   establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797

3   F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut.*

4   *Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of

5   domicile for purposes of determining citizenship).

6        14.    **ODFL's Citizenship.**    ODFL is a Virginia corporation with its corporate

7   headquarters and principal place of business in Thomasville, North Carolina.  *See* California

8   Secretary of State Business Search at https://bizfileonline.sos.ca.gov/search/business (Corporation

9   Name Searched: "Old Dominion Freight Line, Inc.").   At its corporate headquarters in North

10  Carolina, ODFL's officers direct, control, and coordinate ODFL's activities, and the majority of

11  its executive and administrative functions are performed there.   Thus, ODFL is not a citizen of

12  California, but rather, was and is a citizen of Virginia and North Carolina.  *See* 28 U.S.C. §

13  1332(c)(1) (for diversity purposes, "[a] corporation shall be deemed a citizen of any State by

14  which it has been incorporated and of the State where it has its principal place of business"); *see*

15  *also Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (the "'principal place of business' is best

16  read as referring to the place where a corporation's officers direct, control, and coordinate the

17  corporation's activities," and in practice, the principal place of business "should normally be the

18  place where the corporation maintains its headquarters – provided that the headquarters is the

19  actual center of direction, control, and coordination").[2]

20       15.    **Fraudulently–Joined, Sham Defendant Jake Hall.**    In an attempt to destroy

21  diversity of citizenship, Plaintiff has fraudulently-joined Sham Defendant Hall as an individual

22  defendant.   A fraudulently joined defendant will not defeat removal on diversity grounds.  *See*

23  *Isaacs v. Broido*, 358 F. App'x 874, 876 (9th Cir. 2009) (noting fraudulently joined defendant

24  "may be disregarded for the purpose of determining diversity jurisdiction") (citing *McCabe v. Gen.*

26    [2] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendants
27  expressly reserve and do not waive their right to supplement and/or amend their removal
    submissions to present additional information to demonstrate the existence of the requisite
28  diversity between the parties.

1    *Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313,

2    1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat

3    removal on diversity grounds.").

4          16.    Plaintiff alleges only two causes of action against Sham Defendant Hall based on

5    national origin and race harassment in violation of the California Fair Employment and Housing

6    Act ("FEHA"), Cal. Gov't Code § 12940(j).  *See* Exh. A (Complaint), ¶¶ 63-92.  However, Sham

7    Defendant Hall is fraudulently joined because the factual allegations in the Complaint pertaining to

8    him are wholly inadequate under applicable law to state a claim for any cause of action alleged

9    against him, and thus, there is no possibility that Plaintiff can recover against Sham Defendant Hall

10    on any of his claims.  *See, e.g., Martinez v. Schneider Logistics Transloading & Distrib., Inc.*,

11    2016 WL 6833911, at *3-4 (C.D. Cal. Nov. 18, 2016) (denying motion to remand where

12    allegations of disability harassment failed to state a claim for any cause of action against sham

13    defendant).

14          17.    Specifically, Plaintiff attributes the following conduct to Sham Defendant Hall in

15    the Complaint:

16 / 17 / 18
> "In or around October 2021, Plaintiff again applied for a supervisor position. After submitting his application for consideration, Mr. Hall requested that he provide letters of recommendation for consideration of the position. Plaintiff was the only applicant for the supervisory position who was requested to provide letters of recommendation. Plaintiff believed this treatment was because of his race." *Id.*, ¶ 17.

19 / 20 / 21
> "Plaintiff complained to Mr. Hall about … harassing and sexually explicit comments, but Mr. Hall did not take action.  Plaintiff felt so uncomfortable that he asked Mr. Hall to switch shifts so as to not be subjected to Keshawn's and Antoine's harassing behavior." *Id.*, ¶ 22.

22 / 23
> "On or around July 30, 2023, Plaintiff sustained a work-related injury … Plaintiff noticed that following the disclosure of his disability, Mr. Bates and Mr. Hall became more distant and non-engaging toward him." *Id.*, ¶¶ 23-24.

24
> "In or around early September 2023, Plaintiff … applied for a supervisor position and was turned down by Mr. Hall." *Id.*, ¶ 26.

25 / 26 / 27 / 28
> "On or around September 18, 2023, Plaintiff met with Mr. Hall and discussed his frustrations about not being considered for a supervisor position despite his qualifications. Plaintiff informed Mr. Hall that he believed he was not being promoted due to Mr. Hall's discriminatory hiring practices. Mr. Hall responded and stated, 'I have to take care of my people.' Plaintiff understood this comment to mean that Mr. Hall only promoted Caucasians or those with white skin." *Id.*, ¶ 28.

1
2
3

> ➤ "Mr. Hall wrote up Plaintiff for 'improperly' inflating tires … [ODFL] employee, Josh Paulino ('Mr. Paulino'), witnessed Plaintiff inflating the tires and stated to Mr. Hall that he [Plaintiff] was doing the task correctly. Mr. Hall proceeded with the write-up anyway." *Id.*, ¶ 29.

4
5

> ➤ "The same day, Plaintiff noticed a potential safety issue involving a pallet that did not belong to [ODFL], therefore the pallet needed to be promptly removed from their dock. Mr. Hall then ordered Plaintiff to write a statement on this safety issue and the alleged improper tire inflation." *Id.*, ¶ 30.

6
7

> ➤ "Upon leaving [ODFL], Plaintiff texted Mr. Hall asking why he was terminated. He did not receive a response and soon noticed that Mr. Hall had blocked him from any further communication." *Id.*, ¶ 33.

8
9

Based upon these allegations ***alone***, Plaintiff contends that he was subjected to unlawful harassment by Sham Defendant Hall because of his race and national origin. *Id.*, ¶¶ 70, 85.

10      18.    The Complaint is devoid of allegations, comments or conduct by Sham Defendant

11 Hall that would ostensibly qualify as unlawful harassment under FEHA. The allegations that

12 Sham Defendant Hall denied Plaintiff's applications for promotion, asked him to write a statement

13 on a safety issue and improper tire inflation, and issued a write-up consist of routine personnel

14 management actions that do not constitute harassment within the meaning of FEHA. *See, e.g.,*

15 *Gorom v. Old Dominion Freight Line, Inc.*, 2013 WL 195377, *4 (C.D. Cal. Jan. 17, 2013)

16 (denying remand and dismissing fraudulently-joined individual defendants based on holding that

17 alleged rejection of request for transfer and suspension of plaintiff are "personnel decisions that are

18 delegable to a supervisor" and "cannot possibly state a claim for harassment"); *Hurd v. American*

19 *Income Life Ins.*, 2013 WL 5575073, *4 (C.D. Cal. Oct. 10, 2013) (denying remand and finding

20 individual defendant named in FEHA harassment claim was fraudulently joined in complaint

21 alleging that individual defendant, *inter alia*, called plaintiff demanding to know the status of her

22 medical leave and paperwork, because supervisor's interactions with plaintiff merely concerned

23 "matters of Plaintiff's employment"). Because these three allegations describe routine personnel

24 management actions, they fail to support a harassment claim as a matter of law.

25      19.    Indeed, under FEHA, "harassment" is defined to include verbal epithets, derogatory

26 comments or slurs based on a protected classification; physical harassment such as assault,

27 unwelcome touching or impeding movement when directed at an individual based on a protected

28 classification; visual forms of harassment such as posters, drawings, etc. that are infringing on the

1  rights of a protected classification; and requests for sexual favors or unwanted advances which

2  condition an employment benefit upon consent thereto.  *See* Cal. Code Regs. Title 2, §

3  7287.6(b)(1).  That is, harassment "consists of conduct outside the scope of necessary job

4  performance, conduct presumably engaged in for personal gratification, because of meanness or

5  bigotry, or for other personal motives." *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 63

6  (1996) ("Harassment is not conduct of a type necessary for management of the employer's

7  business or performance of the supervisory employee's job.").

8       20.     Under these well-established standards, the alleged conduct Plaintiff attributes to

9  Sham Defendant Hall simply does not qualify as actionable harassment.  Plaintiff's Complaint is

10  devoid of **any** allegation that Sham Defendant Hall made any disparaging or offensive comments

11  to Plaintiff about his race, national origin or other protected characteristic.  As such, Plaintiff's

12  harassment claim against Sham Defendant Hall is **legally and factually groundless and**

13  **completely devoid of merit as a matter of law**.

14       21.     Likewise, the alleged comment by Sham Defendant Hall that he had to "take care of

15  [his] people" also fails to meet the legal definition of harassment, but even if it did, it still fails to

16  sustain a hostile work environment harassment claim against Sham Defendant Hall because it does

17  not rise to the level of actionable harassment.  Plaintiff's harassment claim requires allegations that

18  he was subjected to harassing conduct that was so **severe** or **pervasive** that it altered the terms and

19  conditions of his employment and created an abusive working environment, and conduct that is

20  occasional, isolated, sporadic, or trivial does not meet this standard.  *See, e.g., Fisher v. San Pedro*

21  *Peninsula Hosp.*, 214 Cal.App.3d 590, 610 (1989); *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465

22  (1998); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 129-31 (1999); *see also Mokler v.*

23  *Cnty. of Orange*, 157 Cal.App.4th 121, 145 (2007) (harassment does not encompass conduct that is

24  only "rude, inappropriate, [or] offensive"); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397,

25  409 (1994) (actionable violation of law requires showing that the workplace is "permeated with

26  discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the

27  conditions of the victim's employment and create an abusive working environment").  To that end,

28  FEHA is not a general civility code for the workplace and is not designed to rid the workplace of

vulgarity.  *See Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 295 (2006).  It does not "outlaw … coarse and vulgar language or conduct that merely offends." *Id.*  As one court has explained: "Not every unpleasant workplace is a hostile environment.  The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable.  The workplace that is actionable is the one that is ***hellish***." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) (emph. added).  Thus, FEHA protects only against conduct that is severe enough or sufficiently pervasive to alter the conditions of employment and create a hostile or abusive work environment, and is based upon a protected characteristic.

22.    Even assuming *arguendo* that Sham Defendant Hall's single, isolated comment could be considered a racial epithet or derogatory (which it does not), it is not sufficient to show that Plaintiff's workplace was permeated with intimidation, ridicule, and insult that was so severe and pervasive as to alter the conditions of his employment and create an abusive or intolerable working environment.  Thus, even if the comment attributed to Sham Defendant Hall in the Complaint met the legal definition of "harassment" under FEHA (which it does not), Plaintiff's harassment claim would still fail as against Sham Defendant Hall because the conduct was not severe or pervasive as a matter of law.  *See, e.g., Cofer v. Parker-Hannifin Corp.*, 194 F.Supp.3d 1014, 1018 (C.D. Cal. July 8, 2016) (denying motion to remand where "[h]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee" (int. quot. omitted; emph. in orig.)).  Thus, the Complaint fails to state a claim against Sham Defendant Hall.

23.    Plaintiff's inability to state a claim against Sham Defendant Hall as a matter of law makes his joinder as a party to this action fraudulent.  *See Langevin v. Federal Express Corp.*, 2015 WL 1006367, at *13 (C.D. Cal. Mar. 6, 2015); *see also, e.g., Meisel v. Allstate Indem. Co.*, 357 F.Supp.2d 1222, 1226 (E.D. Cal. 2005) (Coyle, J.) (denying motion to remand and granting motion to dismiss where plaintiff failed to state a claim against fraudulently-joined defendant); *Ritchey*, 139 F.3d at 1318 (finding individual defendants were sham defendants for purposes of

removal where plaintiff failed to state a cause of action against each of them). Therefore, the joinder and citizenship of Sham Defendant Hall can and should be ignored, and this case may be removed to this Court based on the diversity of citizenship that existed and exists between Plaintiff and ODFL at the time Plaintiff's Complaint was filed and at the time of removal.

24. **Doe Defendants.** Defendants "DOES 1-10" are fictitious Defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

25. As Plaintiff and ODFL have diverse citizenship, and Sham Defendant Hall's citizenship should be disregarded because he is fraudulently-joined, there is complete diversity of citizenship between the parties.

### AMOUNT IN CONTROVERSY

26. An action may be removed to and remain in federal court if the defendant establishes, by a preponderance of the evidence, that the aggregate amount-in-controversy exceeds the jurisdictional amount. *See Abrego Abrego v. Dow Chemical Co.,* 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[3] To satisfy the preponderance of the evidence test, a defendant must demonstrate that "it is more likely than not" that the amount-in-controversy is satisfied. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). However, evidentiary submissions are **not** required ***at the time of removal***. *See Arias*, 936 F.3d at 925 (holding that defendant need not prove the amount in controversy in notice of removal). "Instead, evidence showing the amount in controversy is required '*only when* the plaintiff contests, or the court questions, the defendant's allegation.'" *Id.* (emph. added).

27. Indeed, when a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin*

---

[3] *See, e.g., Arias v. Residence Inn by Marriott*, 93 F.3d 920, 924 (9th Cir. 2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1  *Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions

2  made part of the defendant's chain of reasoning need not be proven; they instead must only have

3  'some reasonable ground underlying them.'").  At the time of removal, the removing defendant's

4  burden of establishing that the amount in controversy exceeds $75,000 is not daunting and does

5  not require the defendant to do extensive research or prove the plaintiff's damages.  *See, e.g., Ray*

6  *v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *16 (C.D. Cal. May 9, 2011).  Thus, "a

7  defendant's notice of removal need include only a plausible allegation that the amount in

8  controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554.  Furthermore,

9  it is an abuse of discretion for a district court to *sua sponte* remand a case back to state court

10 without first giving the removing defendant an opportunity to show that the jurisdictional

11 requirements are met.  *Academy of Country Music v. Continental Casualty Co.*, 991 F.3d 1059 (9th

12 Cir. 2021).

13         28.     A plaintiff's complaint is a court's "first source of reference in determining the

14 amount in controversy." *LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1203

15 (9th Cir. 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  In

16 determining whether the amount-in-controversy exceeds $75,000, the court must presume that the

17 plaintiff will prevail on each and every claim asserted in his complaint.  *See Kenneth Rothschild*

18 *Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).  The ultimate

19 inquiry asks what amount is put "in controversy" by the operative complaint—not what a court or

20 jury might later determine to be the actual amount of damages, if any.  *See Ibarra v. Manheim*

21 *Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages

22 suffered" in a removal petition, "but only estimating the damages that are in controversy," because

23 "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal").[4]  The court

24

25         [4] *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir.
2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy
26 by the plaintiff's complaint"); *see also Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal.
Dec. 5, 2014) (determining amount in controversy requires that court assume that the allegations of
27 the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the
complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint,
28

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1  may also look beyond the complaint to determine whether the amount-in-controversy is met, if

2  necessary.  *See Abrego Abrego*, 443 F.3d at 690.

3        29.     The amount in controversy may include general and special compensatory

4  damages.  *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Simmons v.*

5  *PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002).  Further, when attorneys' fees are

6  authorized by statute, they are appropriately part of the calculation of the "amount in controversy"

7  for purposes of removal.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 789, 794 (9th

8  Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS*

9  *Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes

10  an award of attorneys' fees, either with mandatory or discretionary language, such fees may be

11  included in the amount in controversy.").  Moreover, "a court **must** include **future** attorneys' fees

12  recoverable by statute or contract when assessing whether the amount-in-controversy requirement

13  is met."  *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he

14  amount in controversy is determined by the complaint operative at the time of removal and

15  encompasses **all** relief a court may grant on that complaint if the plaintiff is victorious." (emph.

16  added)).  The amount-in-controversy may also include punitive damages and emotional distress.

17  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Kroske*, 432 F.3d at 980.

18                                   **PLAINTIFF'S COMPLAINT**

19       30.     Here, Plaintiff asserts in his Complaint eight causes of action for: (1) race

20  discrimination in violation of FEHA; (2) national origin discrimination in violation of FEHA; (3)

21  race harassment in violation of FEHA; (4) national origin harassment in violation of FEHA; (5)

22  failure to prevent discrimination and harassment in violation of FEHA; (6) retaliation in violation

23  of FEHA; (7) whistleblower retaliation in violation of Cal. Lab. Code § 1102.5 ("Section 1102.5");

24  and (8) wrongful termination in violation of public policy. *See generally* Exh. A (Complaint). In

25  connection with his claims, Plaintiff seeks recovery for "actual, consequential and incidental

26  financial losses, including without limitation loss of salary and benefits," "compensatory and

27

28  not what a defendant will actually owe).

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

4920-3226-8291.2

general damages," "punitive damages," injunctive and declaratory relief, "[a]ttorneys' fees and costs," prejudgment and post-judgment interest, "penalties, pursuant to Labor Code Section 1102.5," and any other remedies deemed just and proper.  *See* Exh. A (Complaint), Prayer for Relief, ¶¶ 1-8.

31.    Considered together, the compensatory damages, emotional distress damages, punitive damages, Section 1102.5 penalties, and statutory attorneys' fees sought by Plaintiff, assuming for purposes of removal only that Plaintiff will prevail on his claims in the Complaint, establish by a preponderance of evidence that the amount-in-controversy far exceeds $75,000.[5] Notably, the $75,000 amount-in-controversy threshold is met even without the inclusion of punitive damages, lost wages through trial, or even statutory attorneys' fees—all of which Plaintiff is seeking and which binding precedent dictates should be considered as part of the amount-in-controversy for purposes of this removal.

## COMPENSATORY DAMAGES

32.    In his Complaint, Plaintiff avers that he was discriminated, harassed, and retaliated against on the basis of race and national origin. *See generally* Exh. A (Complaint).  Plaintiff claims that he has suffered "general and special damages" including "loss of salary and benefits," in an "amount subject to proof at the time of trial."  *Id.*, ¶¶ 44, 58, 73, 88, 99, 112, 127, 137, & Prayer for Relief, ¶¶ 1-2.

33.    Notably, the amount in controversy is not limited to damages incurred prior to removal.  Instead, as the Ninth Circuit held in *Chavez v. JPMorgan Chase & Co.*, it includes lost wages incurred after the time of removal where, as here, they are expressly prayed for as relief in the operative pleading.  *See Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after

---

[5] The amount in controversy calculations, as set forth below, are based on an assumption for purposes of removal only that the allegations of Plaintiff's Complaint regarding his theories of liability are true, but *without any type of express or implied admission* that the conduct alleged in the Complaint occurred, that Plaintiff has suffered any damages, and that such liability in fact exists.  *See, e.g., Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("Removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant). Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial. *See, e.g., Tiffany v. O'Reilly Auto Stores, Inc.*, 2013 WL 4894307, at *3-4 (E.D. Cal. Sept. 11, 2013) (Karlton, J.) denying remand in employment discrimination action and accepting calculation of 108 weeks of post-removal lost wages through date of trial as appropriately included in amount-in-controversy calculation).

34.      Plaintiff alleges he was formerly employed as a Dock Lead.    *See* Exh. A (Complaint), ¶ 16.   Plaintiff was an hourly, non-exempt employee at the time of separation, earning $31.55/hour.  Plaintiff alleges he was placed on a 50% workload following a work-related injury in July 2023, but alleges he was deemed able to return to work at full capacity on or around August 29, 2023. *Id*., ¶¶ 23-25.  From September 1, 2023 to his termination, Plaintiff worked an average of 31.91 regular hours per weekly pay period.[6]

35.      Accordingly, to the extent that Plaintiff prevails on any claim for lost wages from the date of separation (October 12, 2023) through the date of removal (December 12, 2024) only, the lost wages amount in controversy is conservatively estimated to be not less than **$61,414.80** [approximately 61 weeks (October 12, 2023 – December 12, 2024) x $1,006.80 ($31.55 x 31.91 hours/week)].

36.      However, Plaintiff seeks to recover lost earnings well past the date of removal.  *See* Exh. A (Complaint), Prayer for Relief, ¶ 1.  Defendants conservatively estimate that this matter will conclude by the end of December 2025, or within 12 months of its removal from the State Court.[7]  Calculating lost wages *through trial* yields an *additional* amount in controversy of not less

---

[6] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submission to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including, without limitation, by including any lost benefits in calculating the amount in controversy—which would increase the amount in controversy.

[7] This 12-month estimate is extremely conservative in light of the 2024 U.S. Courts Caseload Statistics, which show that the median time interval for disposition of civil cases in this

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1  than **$52,353.60** [52 weeks x $1,006.80/week (December 13, 2024 – December 12, 2025) x

2  approximately $1,006.80/week]. *See, e.g., Chavez*, 888 F.3d at 417 ("If a plaintiff claims at the

3  time of removal that her termination caused her to lose future wages, and if the law entitles her to

4  recoup those future wages if she prevails, then there is no question that future wages are 'at stake'

5  in the litigation, whatever the likelihood that she will actually recover them."). Accordingly,

6  Defendants' lost wages calculation is actually *under-calculated* given the relief sought in the

7  Complaint because it only takes into account Plaintiff's alleged lost wages from the date of his

8  termination on October 12, 2023 through the date of removal, excluding any future lost wages

9  beyond removal and through trial—which are properly included in the amount in controversy.

10  ### EMOTIONAL DISTRESS DAMAGES

11      37.    Plaintiff also seeks to recover "general damages" for "anxiety, worry,

12  embarrassment, humiliation, mental anguish, and emotional distress." Exh. A (Complaint), ¶¶ 45,

13  59, 74, 89, 100, 113, 128, 138 & Prayer for Relief, ¶ 2.

14      38.    Emotional distress damages are appropriately considered by the Court in

15  determining whether the amount in controversy is satisfied for purposes of removal. *Kroske*, 432

16  F.3d at 980; *see also, e.g., Ponce v. Medical Eyeglass Ctr., Inc.*, 2015 WL 4554336, at *4 (C.D.

17  Cal. July 27, 2015); *Simmons*, 209 F.Supp.2d at 1034. "To establish the amount of emotional

18  distress [damages] in controversy, a defendant may introduce evidence of jury verdicts in other

19  cases." *Cain v. Hartford Life & Accident Ins. Co.*, 890 F.Supp.2d 1246, 1250 (C.D. Cal. 2012).

20  District courts in California recognize that "emotional distress damages in a successful

21  employment discrimination case may be ***substantial***." *Simmons,* 209 F.Supp.2d at 1034 (emph.

22  added); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) (same). Indeed,

23  emotional distress damages awards in wrongful termination actions and actions based on

24  discrimination or retaliation in violation of FEHA, such as this one, frequently exceed the $75,000

25  

26  ---

27  District, from filing through trial, is approximately **67.7 months** (or approximately 294 weeks).
*See* Table C-5, downloadable at URL https://www.uscourts.gov/statistics/table-c-5/judicial-business/2024/09/30 (September 30, 2024).

28  

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

amount in controversy **on their own**.   *See, e.g.*, *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Cal. Super. Ct. Feb. 4, 2011) ($385,0000 emotional distress award to plaintiff who alleged wrongful termination based on age upon return to work from medical leave).[8]

39.    In *Kroske*, 432 F.3d at 980, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the amount-in-controversy where the plaintiff's wage loss was $55,000. Accordingly, Defendants conservatively estimate that the minimum value of Plaintiff's emotional distress damages, if he were to prevail (as must be presumed for purposes of removal), would be **at least $25,000.00** for purposes of calculating the reasonable amount in controversy in this action.

## PUNITIVE DAMAGES

40.    Plaintiff also seeks punitive damages in connection with his claims.  *See, e.g.*, Exh. A (Complaint), ¶¶ 47, 61, 76, 91, 102, 115, 130, 139, & Prayer for Relief, ¶ 3.  The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount-in-controversy where they are recoverable as a matter of law.  *See Gibson*, 261 F.3d at 945.

41.    "In order to establish the amount … of punitive damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts."  *Rivera v. Costco Wholesale Corp.*, 2008 WL 2740399, at *4 (N.D. Cal. July 11, 2008).  California district courts routinely find that "the potential for large punitive damage awards in employment discrimination cases" satisfies the amount in controversy without even considering other damages.  *See Simmons*, 209 F.Supp.2d at 1033; *Chambers v. Penske Truck Leasing Corp.*, 2011 WL

---

[8] *See also, e.g.*, *Grodzik v. Calif. Conservation Corps.*, 2010 WL 2734467 (Cal. Super. Ct. June 15, 2010) ($100,000.00 emotional distress award to plaintiff on discrimination/failure to accommodate/retaliation claims); *Anderson v. Am. Airlines, Inc.*, 2008 Mealey's CA Jury Verdicts & Settlements 2008 ($1 million emotional distress award in federal FEHA discrimination action); *Kolas v. Access Bus. Grp.*, 2008 WL 496470 (Cal. Super. Ct. Jan. 14, 2008) ($200,000 emotional distress damages based on claim that plaintiff was fired based on his age and disability and in retaliation for filing a workers' compensation claim for herniated disc he sustained on the job); *Lemke v. BCI Coca-Cola of Los Angeles*, 2004 WL 5825304 (Cal. Super. Ct. Dec. 1, 2004) ($135,000 emotional distress damages awarded in wrongful termination action wherein plaintiff alleged failure to accommodate and retaliation for engaging in protected activity).

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1459155, at *4 (E.D. Cal. Apr. 15, 2011) (Austin, M.J.) (denying remand in FEHA action and finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics, Inc.*, 2009 WL 3368519, at *4 (E.D. Cal. Oct. 19, 2009) (England, J.) (acknowledging million-dollar punitive damages awards and denying remand in FEHA action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional requirement").[9]  Furthermore, punitive damages verdicts on claims similar to Plaintiff's claims here typically far exceed the $75,000 jurisdictional minimum on their own. *See, e.g., Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, at *11-18 (Cal. Ct. App. Apr. 23, 2009) (unpublished) (affirming *$2 million* punitive damages award on plaintiff's FEHA discrimination claims).

42.    In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the United States Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." Here, as shown above, Plaintiff's ostensible compensatory damages as of the time of removal is at least **$172,829.60**.  Utilizing the *smallest* ratio of 2:1 that *State Farm* found to be "instructive" (but without conceding its ultimate propriety for use in this case), and basing any potential exemplary damages award *only* on the past lost wages damages at issue in this action, the potential punitive damages award in this action is approximately $172,829.60 [($61,414.80 lost wages + $25,000 emotional distress damages) x 2] (notwithstanding that Defendants deny that Plaintiff can ultimately establish the necessary conditions for obtaining punitive damages).

### SECTION 1102.5 PENALTIES

43.    Plaintiff seeks to recover a civil penalty in the amount of $10,000 pursuant to his Seventh Cause of Action alleging a violation of Section 1102.5.  *See* Exh. A (Complaint), Prayer

---

[9] *See also* California Jury Instruction (CACI) 2500 (2018), *quoting Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1147-48 (1998) (noting that it is "'settled that California's punitive damages statute, Civil Code section 3294, applies to actions brought under the FEHA'").

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

1    for Relief, ¶ 5.  Pursuant to Cal. Lab. Code § 1102.5(f), an employer is liable for a civil penalty not

2    exceeding $10,000 for each violation of Section 1102.5.  *See also, e.g., Dias v. Burberry Ltd.*,

3    2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021) (finding plaintiff's request for a civil penalty of

4    $10,000 for each violation of the Labor Code placed at least $10,000 in controversy); *Collier v.*

5    *ULTA Salon, Cosms. & Fragrance, Inc.*, 2018 WL 6567695, at *3 (C.D. Cal. Dec. 12, 2018)

6    (including $10,000 in penalties sought for violation of Section 1102.5 in amount in controversy).

7            44.    Accordingly, the value of the civil penalty that Plaintiff seeks in connection with his

8    Seventh Cause of Action is **$10,000.00** for purposes of calculating the reasonable amount in

9    controversy in this action.

10                              **STATUTORY ATTORNEYS' FEES**

11           45.    Plaintiff's Complaint also seeks attorneys' fees and costs under FEHA.  Exh. A

12   (Complaint), ¶¶ 46, 60, 75, 90, 101, 114, & Prayer for Relief, ¶ 6.  FEHA provides for the recovery

13   of statutory attorneys' fees by the prevailing party.  *See, e.g.*, Cal. Gov't Code § 12965(b).

14           46.    In the Ninth Circuit, when attorneys' fees are authorized by statute, they are

15   appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *See*

16   *Arias*, 936 F.3d at 928 (finding district court erred in excluding prospective attorneys' fees from

17   the amount in controversy).  Indeed, "a court **must** include **future** attorneys' fees recoverable by

18   statute or contract when assessing whether the amount-in-controversy requirement is met."

19   *Fritsch*, 899 F.3d at 794 (emph. added); *see Arias*, 936 F.3d at 927-28 (noting that there is *no* split

20   in authority as to whether attorneys' fees should be considered in the amount in controversy and

21   reaffirming *Fritsch*'s holding that "a court must include future attorneys' fees recoverable by

22   statute or contract when assessing whether the amount-in-controversy requirement is met").

23           47.    The Court's own knowledge and experience in ruling on prevailing plaintiffs'

24   motions for attorneys' fees in discrimination, retaliation, and wrongful termination cases, like this

25   action, should indicate that it is "more likely than not" that Plaintiff will be seeking an attorneys'

26

27

28

17

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

1  fees award of **at least** __$75,000.00__ if this case is litigated to judgment in a jury trial.[10]  *See, e.g.,*

2  *Wysinger v. Auto Club*, 157 Cal.App.4th 413, 430-432 (2007) (affirming $980,000 attorneys' fees

3  award in FEHA discrimination action); *Lopez*, 2009 WL 1090375, at *18-21 (affirming trial

4  court's award of $1 million in attorneys' fees on FEHA discrimination claims); *see also, e.g.,*

5  *Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding

6  approximately $160,000 in attorneys' fees in FEHA disability/wrongful termination action where

7  the plaintiff's recovered damages were only $175,000); *Harris v. City of Santa Monica*, 2007 WL

8  4303742 (Cal. Super. Ct., Feb. 27, 2007) (awarding $401,188 in attorneys' fees where plaintiff

9  prevailed in wrongful termination action); *Campos v. Valley Family Health Ctr. Med. Grp., Inc.*,

10  2007 WL 3275361 (Cal. Super. Ct. May 9, 2007) (awarding $117,165 in attorneys' fees to

11  prevailing plaintiff in wrongful termination action).

12      48.    Indeed, Defendants reasonably estimate at this juncture that their own attorneys'

13  fees to defend this action through a jury trial and post-trial motions will be well **over $75,000**

14  based on their counsel's own past litigation experience.

15                    **SUMMARY OF AMOUNT IN CONTROVERSY**

16      49.    Based on the foregoing, the reasonably-calculated amount in controversy on

17  Plaintiff's claims in this action based on the information in the Complaint and presently known to

18  Defendants **only through removal, and without considering any post-removal damages**, is as

19  follows:

20

21

22

23

24  _____

25      [10] Given the other damages at issue in this action, the amount in controversy exceeds the
    jurisdictional minimum in this action even before accounting for attorneys' fees. *See, e.g., Sasso v.*

26  *Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (using a
    "reasonable rate for employment cases" at $300 per hour and "an appropriate and conservative

27  estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to
    equal at least $30,000.").

28

| DAMAGES CLAIMED | CALCULATION | TOTAL |
|---|---|---|
| Lost Wages | Approximately 61 weeks of lost wages (exclusive of employment benefits) from October 2023 termination through date of removal | $61,414.80 |
| Emotional Distress Damages | $25,000 per *Kroske*. | $25,000.00 |
| Punitive Damages | 2:1 compensatory damages ratio per *State Farm*, 538 U.S. 403. | $172,829.60 |
| Section 1102.5 Penalties | Cal. Lab. Code § 1102.5(f) | $10,000.00 |
| Statutory Attorneys' Fees | Conservatively estimated attorneys' fees as of date of trial | $75,000.00 |
| **TOTAL** | | **$344,244.40** |

50.    Accordingly, the conservatively estimated amount in controversy in this action exceeds the $75,000 jurisdictional threshold without considering Plaintiff's prayer for lost wages beyond the date of removal that Plaintiff is pursuing in this action.

51.    Defendants expressly reserve the right to amend or supplement this Notice of Removal and the evidence in support thereof to the fullest extent permitted by applicable law to provide additional supporting evidence or include any additional sums sought in the Complaint, but not included herein, should any aspect of this removal and/or the information set forth herein be challenged.  *See, e.g., Arias*, 936 F.3d at 925-29 (defendant must be provided "a fair opportunity to submit proof" where amount in controversy contested); *Janis*, 472 F. App'x at 534-35 (holding court erred in refusing to consider evidence of amount in controversy submitted after removal in response to a remand motion).

52.    Because there is diversity of citizenship between Plaintiff and ODFL, and because Plaintiff seeks damages in excess of the $75,000 jurisdictional threshold, Defendants may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441(b).

### VENUE

53.    This is a civil action originally filed in State Court in Sacramento County, California.  Defendants are informed and believe the events allegedly giving rise to this action occurred within this judicial district.  Venue lies in this Court because the State Court Action is pending in this district and division.  *See* 28 U.S.C. § 1441(a).

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4920-3226-8291.2

54.    Nothing in this Removal Notice is intended or should be construed as any type of express or implied admission by Defendants of any fact, or the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendants' rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

WHEREFORE, the above-entitled action should be removed from the Superior Court of the State of California in and for the County of Sacramento to this United States District Court for the Eastern District of California.

DATED:  December 12, 2024            **BAKER & HOSTETLER LLP**


By:    _/s/ Sylvia J. Kim_
Matthew C. Kane, Esq.
Sylvia J. Kim, Esq.
Amy E. Beverlin, Esq.
Kerri H. Sakaue, Esq.

Attorneys for Defendant
OLD DOMINION FREIGHT LINE, INC. and
*Specially Appearing* Defendant JAKE HALL

20

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

4920-3226-8291.2

1

## <u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

4

   I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067-4508.

5

6

   On December 12, 2024, I served the following document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

7

8

9

10

NOSRATI LAW          Attorneys for Plaintiff
A PROFESSIONAL LAW CORPORATION   JAOUHER MEGDICH
Omid Nosrati, Esq. (SBN 216350)
Rene M. Maldonado, Esq. (SBN 289739)
Sol Nunez, Esq. (SBN 340914)
1801 Century Park East, Suite 840
Los Angeles, California 90067

11

12

13

14

☒  **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

foregoing is true and correct.

15

16

Executed on December 12, 2024, at Los Angeles, CA.

17

18

           */s/ Tyler Patton*
           Tyler Patton

19

20

21

22

23

24

25

26

27

28

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

4920-3226-8291.2